United States District Court
Southern District of Ohio

| | |
|---|---|
| **Malibu Media, LLC**<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>**John Doe subscriber assigned IP address 173.88.51.39,**<br><br>　　　　Defendant. | Case No. 2:14-cv-00420-GLF-MRA<br><br>Judge James L. Graham<br><br>Magistrate Judge Terrence P. Kemp<br><br>**ORAL HEARING REQUESTED** |

**Motion For Protective Order and for
Leave to Proceed Anonymously**

Now comes Defendant John Doe, whom upon information and belief will be indentified, on or about July 2, 2014, as having been assigned IP address 173.88.51.39 on March 30, 2014 at 3:28 A.M., pursuant to the subpoena served by Plaintiff on Time Warner Cable. John Doe seeks a protective order that his name and indentifying information will not be published or provided to anyone other than Plaintiff's Counsel, pursuant to Fed. R. Civ. P. 26(c).

Furthermore, John Doe seeks leave of this Court to proceed in this action anonymously, and to have all pleadings with his identifying information filed under seal. Defendant John Doe will file his name and address, under seal, with this Court. This is due to the sensitive and salacious nature of the allegations, and because John Doe will be harmed simply by being named in this action, before a modicum of evidence has been produced identifying him as the alleged infringer. While this pre-suit discovery action

Sanborn, Brandon, Duvall
& Bobbitt Co., L.P.A.
2515 W. Granville Road
Columbus, OH 43235-2708
614/889.2531
facsimile 614/889.1442
SBDBLaw.com

1

may have been necessary for the Plaintiff to obtain information to further its investigation of these claims, the Plaintiff and Plaintiff's counsel now has a duty, pursuant to Fed. R. Civ. P. 11 to conduct a reasonable investigation before naming the proper party in this action.

Additional reasons are included in the attached Memorandum in Support.

For these reasons, Defendant John Doe respectfully requests this Court grant this motion prior to July 2, 2014, for an appropriate protective order, and for leave to proceed anonymously, and for an oral hearing on this motion. In the alternative, John Doe respectfully requests this court stay the subpoena response, or amend the subpoena to direct the response to the Court to be held for an *in camera* inspection pending the court's decision on this motion.

Respectfully submitted,

/s/ Bryan M. Griffith

Bryan M. Griffith (0085911)
BGriffith@SBDBLaw.com

L. Christopher Bobbitt (0061303)
CBobbitt@SBDBLaw.com

*Attorneys for Defendant John Doe*

**Sanborn, Brandon, Duvall & Bobbitt Co., L.P.A.**
2515 W. Granville Road
Columbus, Ohio 43235-2708
614.889.2531
614.889.1442 facsimile

Sanborn, Brandon, Duvall & Bobbitt Co., L.P.A.
2515 W. Granville Road
Columbus, OH 43235-2708
614/889.2531
facsimile 614/889.1442
SBDBLaw.com

2

**Memorandum in Support**

I.     **Statement of Facts**

On May 5, 2014, Malibu Media, LLC initiated this action by filing a complaint against an anonymous John Doe, having used internet protocol ("IP") address 173.88.51.39, alleging copyright infringement of seventy-nine (79) pornographic video files. Complaint. This allegation was later amended, on May 13, 2014, to only twenty-four (24) alleged acts of infringement between October 7, 2012 and March 30, 2014. Doc #4 Notice of Filing Corrected Exhibits. The Plaintiff sought expedited discovery from the Internet Service Provider allegedly using the IP address on the most recent date of infringement, of March 30, 2014, not each date or the range of dates of alleged infringement. Exhibit 1, Subpoena.

Attached to Plaintiff's Complaint is the Declaration of Patrick Paige, in which he admits that it is possible the infringer is not located at the same address as the internet subscriber with the alleged IP address. Declaration of Patrick Paige, ¶¶ 21-23. Mr. Paige identifies wireless internet connections ("WiFi ") as a means of an infringer outside the residence using the connection for infringement. *Id.* at ¶ 22-23.

II.    **Law and Argument**

Leave to proceed under pseudonyms is discretionary with the court. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). In considering whether to grant such leave we start from the premise that proceeding pseudononymously is the exception rather than the rule. Fed.R.Civ.P. 10(a) requires that the complaint state the names of all parties. In order to circumvent this requirement, it must be shown that the need for anonymity

Sanborn, Brandon, Duvall
& Bobbitt Co., L.P.A.
2515 W. Granville Road
Columbus, OH 43235-2708
614/889.2531
facsimile 614/889.1442
SBDBLaw.com

3

substantially outweighs the presumption that parties' identities are public information and the risk of unfairness to the opposing parties. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000); *Doe v. Porter*, 370 F.3d at 560. In balancing these considerations, the court may consider (1) whether the [party] seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the [party] to disclose information of the utmost intimacy; (3) whether the litigation compels [the party] to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the [parties] are children. *Doe v. Porter*, 370 F.3d at 560; *Citizens for a Strong Ohio v. Marsh*, 123 Fed.Appx. 630 (6th Cir. 2005).

In another recent copyright infringement suit in this Court, an anonymous *pro se* defendant filed a Motion to Proceed Anonymously, and the Court denied the motion because the material at issue was a Robert Redford movie, titled "The Company You Keep", which is not pornographic, and the defendant did not identify any of the *Doe v. Porter* factors, or how the need for anonymity outweighed the risk of unfairness to the plaintiff or the general presumption of public disclosure of court records. *TCYK, LLC v. Does 48-98*, 2:13-cv-540, 2-3 (SDOH 2013).

In another Malibu Media case in the Eastern District of Wisconsin, the court granted a defendant's motion to proceed anonymously. *Malibu Media, LLC v. John Doe*, 13-C-536, 3 (EDWI September 17, 2013). In Malibu Media, the court found good cause to allow the defendants to proceed anonymously. *Id.*, citing *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, at *5 (N.D. Ill. Aug. 27, 2012) ("because Doe (as a defendant) has not purposefully availed himself of the courts, the public's

Sanborn, Brandon, Duvall
& Bobbitt Co., L.P.A.
2515 W. Granville Road
Columbus, OH 43235-2708
614/889.2531
facsimile 614/889.1442
SBDBLaw.com

4

interest in knowing his identity is weaker"). Other Sixth Circuit courts have followed suit issuing protective orders, out of an abundance of caution, since the subscriber who pays the bill for the internet connection is not necessarily the user responsible for the alleged infringement. *Patrick Collins, Inc. v. John Does 1-33*, 2013 U.S. Dist. LEXIS 50674, 38-39, 4:12-cv-13309 (EDMI 2013); see also *Nucorp, Inc. v. Does 1-24*, 2012 U.S. Dist. LEXIS 187547, 21, 2:11-CV-15222 (EDMI 2012).

### Mere Disclosure of John Doe's Name Will Result in Disclosure of Intimate Information and Irreparable Harm

Simply being associated with these allegations of collecting pornographic films has cause John Doe and his family great stress and mental anguish. He is greatly concerned about his reputation and the possible damage the mere allegation of this complaint could have on his reputation in the community. As with most small businesses, John Doe's business depends on his reputation in the community, and his reputation to truthfully help his clients.

John Doe is a respected member of his community and makes his living as the proprietor of a small business. His business is conducted pursuant to a contract for a supplier ("Supplier Contract"). The Supplier Contract allows his supplier broad discretion to terminate the Supplier Contract, and all of his income, if the supplier determines he committed any fraudulent, dishonest, or illegal act, such as stealing copyrighted films. Exhibit 2 is a redacted relevant portion of the supplier contract. The Supplier Contract also obligates John Doe to conduct himself with "ethical market conduct", and failure to do so may result in termination of the Supplier Contract.

Sanborn, Brandon, Duvall
& Bobbitt Co., L.P.A.
2515 W. Granville Road
Columbus, OH 43235-2708
614/889.2531
facsimile 614/889.1442
SBDBLaw.com

5

John Doe also holds one or more government licenses which requires him to report any lawsuits in which he is involved, and being named in this lawsuit can result in scrutiny, investigation, and possible loss of his license to do business.

Finally, John Doe is an involved member of a Lutheran Church where pornography is discouraged with biblical consequence, and it is referred to as "evil" in Luthern writing. Exhibit 3 is a publication of the Evangelical Lutheran Church of America discussing the evils of pornography.

Once John Doe becomes associated with the claims in this matter, the damage will be done very quickly to his reputation, and he may have no recourse to recover his Supplier Contract, his reputation, or his church affiliation and companionship. This directly relates to the second *Doe v. Porter* factor in that alleging John Doe watches and illegally downloads and shares pornography, reveals alleged details John Doe of the utmost intimacy, including his details of his sexuality.

If served, or service is waived, John Doe will generally deny all claims, as he knows nothing about Bittorrent or the allegedly infringed content.

### Local Rule 79.3 Requires the Court to Stay the Subpoena Disclosure Pending the Ruling on this Motion

Local Rule 79.3(a)(3) requires that all documents that are the subject of a motion for sealing shall be submitted to the Clerk for filing in a securely sealed envelope, pending this Court's further order. John Doe respectfully requests this Court enter an urgent order staying the Subpoena to Time Warner Cable, or modifying the Time Warner

Sanborn, Brandon, Duvall
& Bobbitt Co., L.P.A.
2515 W. Granville Road
Columbus, OH 43235-2708
614/889.2531
facsimile 614/889.1442
SBDBLaw.com

6

Cable Subpoena to file the response under seal with the Clerk pending resolution of this Motion.

### III.     Conclusion

For these reasons, Defendant John Doe respectfully requests this Court grant this motion prior to July 2, 2014, for an appropriate protective order, and for leave to proceed anonymously, and for an oral hearing on this motion. In the alternative, John Doe respectfully requests this court stay the subpoena response, or amend the subpoena to direct the response to the Court to be held for an *in camera* inspection pending the court's decision on this motion.

Respectfully submitted,

/s/ Bryan M. Griffith
_____

Bryan M. Griffith (0085911)
BGriffith@SBDBLaw.com

L. Christopher Bobbitt (0061303)
CBobbitt@SBDBLaw.com

*Attorneys for Defendant*
*John Doe*

**Sanborn, Brandon, Duvall & Bobbitt Co., L.P.A.**
2515 W. Granville Road
Columbus, Ohio 43235-2708
614.889.2531
614.889.1442 facsimile

Sanborn, Brandon, Duvall & Bobbitt Co., L.P.A.
2515 W. Granville Road
Columbus, OH 43235-2708
614/889.2531
facsimile 614/889.1442
SBDBLaw.com

## Certificate of Service

I hereby certify that a true copy of the foregoing was served upon the following by the court's electronic filing system, this 28th day of June, 2014:

**Yousef M. Faroniya (0087262)**
84 S. 4th Street
Columbus, Ohio 43215
Yousef@ymfincorporated.com
*Attorney for Plaintiff*

/s/ Bryan M. Griffith

Bryan M. Griffith
*Attorney for Defendant
John Doe*

Sanborn, Brandon, Duvall
& Bobbitt Co., L.P.A.
2515 W. Granville Road
Columbus, OH 43235-2708
614/889.2531
facsimile 614/889.1442
SBDBLaw.com

*13820 Sunrise Valley Drive*
*Herndon, VA 20171*



June 5, 2014

**VIA MAIL**

Re: <u>Court Order Dated May 14, 2014 re: IP Address 173.88.51.39</u>

Dear ▮▮▮▮▮:

    A Judge of the Southern District Court of the State of Ohio has entered an Order (copy enclosed) requiring Time Warner Cable to provide information in connection with the Road Runner account assigned IP address 173.88.51.39 on March 30, 2014. Our records indicate that your account was assigned the above IP address on the date and time in question.

    If the Order is not set aside, we will be forced to provide Yousef M. Faroniya of The Law Office of Yousef M. Faroniya with your name, address and other account information. If you object to our production of these records, you should consult with an attorney as to your options to set aside the Order. Unless we receive an Order from the court by the end of business on July 2, 2014 instructing us not to release your account information, we will have no choice but to comply with the attached Order.

    If you are represented by an attorney with respect to this matter, please forward this letter to your attorney.

Very truly yours,

Sean Harris
Subpoena Analyst
Law Enforcement Response Operations Center

*TWC Ref. # cv-00420-GLF-MRA*
*SH*

**Exhibit 1**

Mail
5/21/14

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the Southern District of Ohio

| MALIBU MEDIA, LLC | Case No. 2:14-cv-00420-GLF-MRA |
|---|---|
| Plaintiff | |
| v. | |
| John Doe subscriber assigned to IP address 173.88.51.39, | |
| Defendant. | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Road Runner/Time Warner Cable
c/o Subpoena Compliance Team
13820 Sunrise Valley Drive
Herndon, VA 20171
Via Facsimile: (704) 697-4911
Via Email: Subpoenainquiry@twcable.com

[X] *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

Please produce documents identifying the name, address, and telephone number of the defendant John Doe listed in the below chart:

| IP Address | Date/Time UTC |
|---|---|
| 173.88.51.39 | 03/30/2014 03:28:19 |

| Place: The Law Office of Yousef M. Faroniya<br>Yousef M. Faroniya, Esq.<br>84 S. 4th St.<br>Columbus, Ohio 43215 | Date and Time:<br>July 7th, 2014 @ 9:30 a.m. |
|---|---|

[ ] *Inspection of Premises*: YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

**Exhibit 1**

|  |  |
|--|--|
|  |  |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 5/19/14

CLERK OF COURT

_____    OR    _____
Signature of Clerk or Deputy Clerk              Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing Plaintiff, who issues or requests this subpoena, are:
Yousef M. Faroniya, Esq., The Law Office of Yousef M. Faroniya, 84 South 4th Street, Columbus, OH. 43215, Telephone: (614) 360-1855, Email: yousef@ymfincorporated.com

**Exhibit 1**

This Agreement shall terminate:

(a) At any time for any reason whatsoever, with or without cause, by either the Company or the Agent giving to the other party written notice delivered in person or sent by ordinary mail to the party's last known address.

(b) Immediately upon the death of the Agent.

(c) Immediately and without written notice if the Company determines that the Agent has committed any fraudulent, dishonest, or illegal act or had misappropriated or withheld funds, and the date of such termination shall coincide with the date of the violation or act giving rise to termination. After such termination, no further commissions, fees, or other compensation shall be paid to the Agent.

14. **ETHICAL MARKET CONDUCT**

The Company will define and publish rules, policies and directives to which the Agent is required to conform. Such rules, polices and directives may change from time to time at the Company's discretion.

7

**Exhibit 2**



# PORNOGRAPHY

*(A statement of the Seventh General Convention of The American Lutheran Church adopted October 12, 1974, by action GC74.12.48, as a statement of comment and counsel addressed to the members of the congregations of The American Lutheran Church to aid them in their decisions and actions.)*

1. Pornography often is equated with obscenity. Pornography indeed may be obscene, but so are other matters not related to sex. Violence, war, double talk intended to deceive, exploiting or treating any other human being as a thing, engaging in manipulative selling, placing material interests ahead of human values—these too are obscene. Christians make a mistake when they leave the impression that it is only sex-oriented obscenities, not the whole range of offenses done to other human beings, which arouse their opposition.

2. Appeals to clamp down on pornography cause problems for Christians. They understand pornography to be material that depicts or describes erotic behavior in ways deliberately intended to stimulate sexual excitement. They regard human sexuality too highly to see it trifled with as a thing for the market place. Thus Christians easily respond to calls for sexual purity and morality in print, on the screen, and on the stage. However, deeper questions are involved in the usual efforts to curb pornography, such as:

—is it either right, necessary, or salutary to use civil laws to set standards for thoughts, tastes, and attitudes toward sexual practices?

—how can persons and communities be protected against sex-saturated materials and outlets which offend the sensitive or exploit the gullible?

—what room is there, with both freedom and responsibility, to explore issues and problems in human sexuality even though they run counter to current taboos and standards?

—why is so much of the sexual relegated to the realm of the forbidden and why is it made so difficult for people to appreciate their sexual selves and their sexual feelings?

—how does the Gospel liberate the believer from crippling enslavement both to prevailing sexual stereotypes and to self-centered pursuit of erotic pleasures?

3. Christians as citizens need to give thoughtful consideration to the issues involved in pornography. Two recent major events served to focus public attention on these issues. The first was the 1970 *Report of the Commission on Obscenity and Pornography,* including the vigorous dissents registered by minority members. In summary, the Commission advocated "the right of adults who wish to

**Exhibit 3**

do so to read, obtain, or view explicit sexual materials." It recommended legislation both to regulate "the sale of sexual materials to young persons who do not have the consent of their parents" and "to protect persons from having sexual materials thrust upon them without their consent through the mails or through open public display." Beyond these exceptions, the Commission recommended the repeal of all legislation prohibiting "the consensual sale, exhibition, or the distribution of sexual materials to adults."

4. The second major event was the June 21, 1973 series of decisions by the Supreme Court of the United States reaffirming previous decisions that "obscene material is unprotected by the First Amendment." Acknowledging "the inherent dangers of undertaking to regulate any form of expression" the majority of the Court agreed to "confine the permissible scope of such regulations to works which depict or describe sexual conduct." The Court set three guidelines: "(a) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest.... (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." Far from settling the situation, the Court decisions raised further critical issues yet to be resolved.

5. Persons seriously interested in attacking the evils associated with pornography wisely would consider such points as the following:

   a. Pornography is big business, supplying a product for which there is evident demand. Refusal to buy the product, and withholding patronage from those who offer the offending goods or services, strike at the profit core.

   b. By most standards pornography is a low-grade, low quality, overpriced product that prostitutes the sexual side of human life. Good judgment and good taste argue against spending good money for inferior, shabby, degrading products.

   c. Pornography preys on sexual ignorance, fears, and frustrations. Positive acceptance of oneself as a sexual being, and healthy attitudes and orientation to human sexuality, reduce the lures of pornography.

   d. The influence and example of parents and other trusted adults in their reading, viewing, leisure-time, and entertainment habits communicate powerfully to children and youth. Parental guidance, to be effective, needs reliable information concerning issues, materials, and curiosities currently in tension.

   e. The law, the police, and the courts are the legal resources available for combating pornography. Cooperation between citizens and personnel in law enforcement systems is essential if a specific alleged violation is to be given its due judicial decision.

6. The church has the opportunity through the Spirit of God for creating new human beings who are free and responsible to live and act because of the power of the Gospel. The church teaches, on the basis of the whole of God's counsel, the importance of controls arising from within because of a person's relationship with the Living Lord. It stresses a person's right to make free choices, under God, accountable to God, considerate of the neighbor. Such choices take civil law into account, but take even more seriously God's Law and the Gospel revealed in His Son. Human freedom of course carries the risk that some persons will misuse their freedom. Human freedom also insures opportunity for many persons to grow in wisdom, knowledge, and favor with God and neighbor. Such freedom, applied to pornography, carries risks of misuse and exploitation. Such freedom, applied to pornography, also insures opportunity for many persons to grow in understanding and appreciation for God's gift of human sexuality.

7. For civil legislators the difficult task is (a) to balance freedom and responsibility, (b) to protect the sensitive and the gullible, (c) to assure a climate for open and honest discussion of issues related to human sexuality, (d) to define clearly that which is a scandal and an offense to standards of morality and integrity, and (e) to provide channels for adjudicating between competing sets of standards and values. How to achieve these goals is a perplexing exercise in political realities. Christian citizens will offer their counsel, their prayers, their support for what is good and wholesome, and their energies to correct what is evil and destructive in public policies dealing with pornography.

**Exhibit 3**

The printing and distribution of this statement by the:
    Office of Research and Analysis
    The American Lutheran Church
    422 South Fifth Street
    Minneapolis, Minnesota 55415
has been authorized by the General Secretary of The American Lutheran Church.
    Price: 4¢ per copy; 44¢ per doz.; $3.60 per 100

Printed in U.S.A.

**Exhibit 3**